UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GWENDOLYN MORRIS,

    Plaintiff,

vs.

                                        Case No.:

GREYHOUND LINES, INC.,
a subsidiary of FIRST GROUP, PIC.        Demand for Jury Trial

    Defendant.
_____/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Gwendolyn Morris ("Plaintiff"), by and through her undersigned counsel, hereby sues Defendant, Greyhound Lines, Inc., a wholly owned subsidiary of First Group, Pic ("Defendant" or "Greyhound"), and states as follows:

1. This is an action to remedy unlawful employment practices and civil rights violations brought pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. (the "ADA"), and the Florida Civil Rights Act ("FCRA"), Chapter 760, Florida Statutes (2019). Plaintiff seeks equitable relief and damages including: declaratory and injunctive relief; back pay; compensatory damages for emotional pain and suffering; punitive damages; attorney's fees, costs and expenses; and all other relief the Court deems just and proper.

**JURISDICTION, VENUE AND PARTIES**

2. Venue lies within the United States District Court for the Middle District of Florida, Orlando Division because a substantial part of the events giving rise to Plaintiff's claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

3. Defendant is a foreign business enterprise, which conducts business throughout the United States and abroad. This action arises from Plaintiff's employment and termination with Greyhound Lines, Inc., one of FirstGroup Pic, subsidiaries, a long-standing intercity transit operation, commonly referred to as "Greyhound," which operates and maintains a place of business in Orlando, Florida.

4. Defendant is an Employer within the meaning of both the ADA and FCRA, employing over 500 employees.

5. Plaintiff is an adult and a resident of Orange County, Florida.

6. At all times material, Plaintiff was an employee and aggrieved person within the meaning of the ADA in that she was an employee of Defendant who was disabled, within the meaning of the ADA, and was regarded as disabled by agents and officers of Defendant.

**CONDITIONS PRECEDENT**
**U.S. Equal Employment Opportunity Commission**
**Dual Filing**

7. On or around May 21, 2018, Plaintiff timely dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), alleging discrimination on the basis

disability.[1] (Exhibit "A")

8. In accordance with federal law EEOC conducted an investigation into Plaintiff's charge of discrimination. After providing both parties with an opportunity to address the merits of the charge, and after obtaining evidence and position statements from both Plaintiff and Defendant, the EEOC issued a "Letter of Determination" on May 6, 2019. In its determination the EEOC concluded that there was reasonable cause to believe Greyhound violated the ADA in its firing of Plaintiff. (Exhibit "B")

9. On September 23, 2019, after efforts to mediate Plaintiff's claim failed, the EEOC issued a "Right to Sue Notice" notifying Plaintiff of her right to file suit within 90 days of receipt of the "Notice." (Exhibit "C")

10. Plaintiff satisfied the conditions precedent to seeking a remedy pursuant to the ADA and, at the same time, establishing jurisdiction pursuant to Chapter 760, *Florida Statutes* (2019).

## FACTUAL ALLEGATIONS

11. Defendant is a business enterprise operating in the United States and abroad, primarily engaged in the business of transporting passengers for hire. The "parent" entity, FirstGroup Pic, maintains its principal place of business in the United Kingdom, from which financial and managerial control is exercised over its wholly owned subsidiaries, including Greyhound Lines, Inc., its intercity transit operations in the United States.

---

[1] Section 760.11, Florida Statutes (2019), provides that a charge filed with the EEOC will be deemed as dual filed with the FCHR on the date it was filed with the EEOC.

12.     Greyhound Lines, Inc. employs over 5000 employees in the U.S, with at least 100 employees working regularly in Florida.

13.     At all times material, Plaintiff worked for Defendant as a customer service representative at Defendant's Orlando, Florida facility.

14.     Plaintiff worked for Defendant for approximately eighteen (18) years prior to her termination on or around November 17, 2017. Plaintiff was qualified to perform the essential requirements of her job.

15.     Plaintiff was viewed as a trustworthy employee, one that exceeded the requirements of her job title, and as such was regularly asked to manage the Orlando facility in the absence of managers, especially during the difficult night-time operations. Plaintiff did not receive any additional compensation for these duties.

16.     During her employment with Defendant, Plaintiff experienced mobility issues, including difficulty walking, standing for long periods of time, or carrying very heavy objects.

17.     As a result of her disability, Plaintiff was accommodated, provided a stool to allow her to sit behind a ticket counter and permitted to obtain assistance when it was necessary to move very heavy baggage or boxes. Despite these accommodations and her long-standing mobility issues, Plaintiff performed her job to the satisfaction of her immediate supervisors and management of the Orlando facility.

18.     However, about two (2) years prior to her firing, Defendant changed managers at the Orlando operation. This change in management brought about a marked difference in how Plaintiff's disabling condition was addressed by management. The new manager almost

4

immediately made note of Plaintiff's disability, periodically commenting on the way she walked, her balance, and commenting on the fact that he regularly watched her move about on the facilities' internal video monitors.

19. Shortly after replacing the former manager, the new manager also questioned her use of a stool, telling Plaintiff he was not going to permit her to continue use a stool. However, after challenged by Plaintiff, and questioned by some of Plaintiff's co- workers, the new manager relented, begrudgingly allowing Plaintiff the use a stool for relief from standing for long periods of time behind a ticket counter.

20. Following the change in managers, Plaintiff felt she was being closely monitored, constantly being reminded of her disability and told that every incident in which she appeared to lose her balance was tied to her disability rather than other circumstances, e.g., coiled rope, unprotected cables, etc.

21. In November of 2107, while still mourning the loss of a child, Plaintiff felt the need to take a few days off.  In informing her supervisor about the absence, Plaintiff was told the "boss man" will require you to get to get a doctor's note before returning to work." Plaintiff complied with the request and returned to work with a doctor's note. Among other things, the medical note contained a statement that Plaintiff should avoid lifting more than 50lbs.

22. Plaintiff was prepared and able to return to work, and after working for Defendant in the same capacity for years, understood the lifting limitation would not prevent her from doing her job.

23. Defendant's manager, however, insisted the Plaintiff could not work until she was seen and evaluated by a "company doctor." Plaintiff followed the manager's instruction and was seen by Defendant's physician. During this physician's exam, Plaintiff was informed that the Defendant provided a listing of alleged physical job requirements, including a requirement that Plaintiff be able to lift 100lbs., a requirement that had not been imposed in the 18 plus years of her employment with Defendant.

24. Immediately following Defendant's ordered physical exam, Plaintiff met with the manager of the Orlando facility and was told the physician who conducted the exam stated that Plaintiff should not lift more than 30lbs and that Greyhound had a requirement that employees working in her job lift at least 100lbs. Despite the fact that Plaintiff was satisfactorily performing her job before going out on sick leave, and despite the fact that she and the other customer service reps had never been required to lift objects they felt were too heavy, Plaintiff was told she could not work for Greyhound because she did not meet the minimum requirements for the job.

25. Plaintiff's last paid day with Defendant was November 17, 2017, the day she met with the manager to discuss the so-called weight limitations. During that meeting, the manager also told Plaintiff that she was eligible to retire with social security and that if she agreed to voluntarily retire, he could arrange to pay her half pay for a short period of time while he placed her on "FMLA" leave. Plaintiff refused the offer, insisting she was the same person then as she was before the short sick leave and that she and the other customer service reps were never required to lift heavy objects, that men and other workers were always on hand in the few

instances when lifting a heavy object was required of her.

26. Plaintiff's efforts to remain on the job were ignored. She was sent home that day and told her only option was to go on "FMLA" leave and get a partial payment for a short period of time before being terminated.

27. Defendant made efforts to get Plaintiff to accept the "severance" offer, but Plaintiff was unwilling to accept her termination from Greyhound, insisting she could and would return to work if provided the opportunity.

28. On or about January 2, 2018, Defendant notified Plaintiff that she was fired for abandoning her position. The "abandonment" was allegedly the result of Plaintiff's failure to communicate with Defendant in response to alleged letters and phone calls after the November 17 meeting with the Orlando facility manager.

29. Defendant's claim that Plaintiff "abandoned" her job with Greyhound is fabricated, it is an allegation intended to avoid an examination of the real reason behind Plaintiff's termination.

30. Defendant's alleged "essential job requirement" for customer service reps at Orlando to lift 100lbs is unsupported by the facts and, in this instance, was used as a pretext to push Plaintiff out of her job because she was regarded as disabled, within the meaning of the ADA and FCHR.

31. As a result of the Defendant's discriminatory treatment towards Plaintiff, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, shame, loss of self-esteem and dignity, mortification, disgrace, embarrassment, loss of enjoyment

of life, and mental anguish.

32. Defendant's conduct and that of its agents and officers was willful and wanton, in reckless disregard for her federal and state protected rights, entitling her to an award of punitive damages in addition to all other damages allowed by law.

33. Plaintiff has had to retain the undersigned law firm to which she is obligated to pay reasonable attorneys' fees, costs and expenses.

## STATUTORY CAUSES OF ACTION

### AMERICAN WITH DISABILITY ACT AND FLORIDA CIVIL RIGHTS ACT – DISABILITY/HANDICAP DISCRIMINATION

34. Plaintiff re-alleges the allegations of paragraphs 1 through 33 as it fully set forth herein.

35. Plaintiff is an individual entitled to protection under both the American with Disabilities Act and the Florida Civil Rights Act.

36. Plaintiff is an employee within the meaning of the American with Disabilities Act and the Florida Civil Rights Act.

37. Plaintiff is an individual with a disability/handicap within the meaning of the American with Disabilities Act and the Florida Civil Rights Act. Specifically, Plaintiff's mobility problems, substantially limited one or more major life activities and one or more major bodily functions.

38. Plaintiff was a qualified individual with a disability within the meaning of the American With Disabilities Act and the Florida Civil Rights Act, because Plaintiff, with or

without a reasonable accommodation, could perform the essential functions of her job.

39. By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the American With Disabilities Act and the Florida Civil Rights Act. Specifically, Defendant discriminated against Plaintiff by terminating Plaintiff's employment with Defendant.

40. The above described acts of discrimination constitute a violation of both the American with Disabilities Act and the Florida Civil Rights Act, for which Defendant is liable.

41. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

42. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the statutory rights of Plaintiff.

43. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a. Back pay and benefits;

b. Prejudgment interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e. Punitive damages;

    f.      Attorneys' fees and costs;

    g.      Declaratory and Injunctive relief; and

    h.      For any other relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

45.    Plaintiff demands a trial by jury.

Dated this 20th day of December, 2019

                              Respectfully submitted,

                              **/s/ Joseph Egan, Esquire**
                              Joseph Egan, Esquire
                              FL Bar No. 180102
                              EGAN, LEV & SIWICA
                              Post Office Box 2231
                              Orlando, FL 32801
                              Telephone: (407) 422-1400
                              Facsimile: (407) 422-3658
                              Primary: jegan@eganlev.com
                              Secondary: dvaughan@eganlev.com